IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

MICAH BOOKER,                         )
                                      )
            Plaintiff,                )
                                      )
      v.                              )      No. 03-01064-CV-W-SOW
                                      )
KESSINGER/HUNTER                      )
MANAGEMENT, INC.,                     )
                                      )
            Defendant.                )

ORDER

Before the Court are defendant's Motion for Summary Judgment (Doc. #14), defendant's

Suggestions in Support, plaintiff's Suggestions in Opposition, and defendant's Reply. Also

before the Court is defendant's Motion to Strike Portions of Plaintiff's Affidavit and Exhibit A to

Plaintiff's Affidavit (Doc. #26).

I. Background

Plaintiff Micah Booker has filed this lawsuit against defendant Kessinger/Hunter

Management Company, Inc. ("Kessinger/Hunter") claiming that while he was an employee of

defendant his rights were violated pursuant to Title VII of the Civil Rights Act of 1964 and 42

U.S.C. §1981. Defendant Kessinger/Hunter moves for summary judgment on plaintiff's claims.

The undisputed material facts relevant to the pending motion for summary judgment are as

follows: defendant Kessinger/Hunter is the management company solely responsible for the

management of Crown Center Redevelopment Corporation. Gary Hill is the Director of

Operations for defendant and oversees the Operations, Engineering, and Security Departments, in

addition to other duties. Charles Rentschler is the Security Operations Manager and is

responsible for the overall scheduling, special events coordination, and management of the Security Department.

The Security Department provides security officers and dispatchers for the security of Crown Center tenants and invitees. There are eight Security Department supervisors who report directly to Rentschler. These supervisors manage the hourly work force which includes Communications Technicians ("dispatchers") and Security Officers.

Plaintiff is an African-American male. He is six feet tall and weighs 385 pounds. In March of 2003, plaintiff applied for a dispatcher position with defendant Kessinger/Hunter. Karen Maxey was the Command Center supervisor during the time plaintiff Booker worked for defendant Kessinger/Hunter.[1] As such, she was the direct supervisor of the dispatchers, including plaintiff. Rentschler and Maxey interviewed plaintiff for the dispatcher position. Plaintiff Booker was hired as a dispatcher.

On or about March 21, 2003, defendant sent Booker a letter confirming the terms of his employment. This letter informed plaintiff that his employment was considered at will and that the company used the first six months of employment as an introductory period to evaluate capabilities, work habits, and overall performance of employees. The letter stated that plaintiff could be terminated "at any time during or after the introductory period, with or without cause or advance notice."

During the time plaintiff Booker was employed by defendant Kessinger/Hunter, defendant had an employee handbook that outlined defendant's policies and procedures. It is

---

[1]Although plaintiff contends that this fact is controverted, plaintiff has not offered admissible evidence to the contrary.

undisputed that plaintiff Booker reviewed the handbook and signed an acknowledgment of receipt form, indicating that he understood the contents of the handbook and that it was his responsibility to comply with the provisions contained therein.

Employees hired as dispatchers work in the Command Center. The Command Center is a room equipped with visual monitors, cameras, and other equipment used to monitor distress calls in and around Crown Center. Dispatchers function as a single point of contact for all of Crown Center's personnel and tenants. The dispatchers monitor alarm system signals that indicate the location of a fire or any other emergency. When dispatchers receive a signal or call indicating some type of problem, they are required to immediately dispatch police, fire, medical, or other personnel to address and correct the problem.

Typically, two dispatchers are assigned to the Command Center at any given time. Dispatchers in the Command Center monitor either the operations panels and monitors or the security panels and monitors for alarms or distress calls. A dispatcher only monitors one department at any given time. If the dispatcher monitoring the operations side of the Command Center and receives a distress call or notices an alarm, then the dispatcher contacts individuals in the Service Department and dispatches them to the area where the machinery or other industrial apparatus has failed. If a dispatcher is monitoring the security side of the Command Center and receives a distress call or notices an alarm, then the dispatcher contacts a security officer and dispatches him or her to the appropriate area.

Plaintiff has never worked as a security officer nor did he have any training to work as a security officer while he was employed by defendant Kessinger/Hunter.

On July 30, 2003, plaintiff and Greg Coppotelli were working in the Command Center.

3

Joel Crowell, a Caucasian male who worked in defendant's Operations Department as a maintenance repairman during plaintiff's tenure with the company, said over a recorded communication line, "Is there two of you in there? One of you or one of Micah?" Upon hearing this remark, plaintiff asked Coppotelli what Crowell meant. Coppotelli told plaintiff that he should ask Crowell himself. Plaintiff never spoke to Crowell about the remark. Plaintiff never asked Crowell what he meant by his remark.

According to Crowell, he was testing fire alarms at 2600 Grand Boulevard on July 30, 2003. Before starting the test, Crowell called the Command Center to determine whether there were two dispatchers present - one dispatcher to monitor the panel and one dispatcher to respond to any calls that may come into the Command Center. Maxey had previously instructed service utility personnel, such as Crowell, to ascertain that two dispatchers were present in the Command Center prior to testing the fire alarms. The reason for this directive is that it would be virtually impossible for one dispatcher to monitor the panel to determine whether the fire alarms are functional and to respond to any calls that may come into the Command Center during the test.

Within fifteen minutes of hearing Crowell's remark, plaintiff Booker reported the remark to Nancy Audsley, the Security Department supervisor, who was on-duty at that time. While plaintiff Booker was sitting with Audsley, she sent an e-mail to plaintiff's immediate supervisor, Karen Maxey reporting what had happened and asking Maxey to check the radio tape and get back to plaintiff.

Booker claimed in his deposition in this case that he heard "racial" comments on the radio prior to July 30, 2003. Plaintiff claims that he reported those comments to Maxey at the time he complained to her about Crowell's comment. Plaintiff cannot specifically recall any of

4

the alleged racial comments. Plaintiff admits that he had not previously reported any racial comments to anyone in management. He also acknowledged that none of the comments he heard previously were directed at him.

The following day, July 31, 2003, Maxey spoke with plaintiff Booker about Crowell's remark. In discussing the remark with Maxey, plaintiff Booker told her that he believed the comment may have been a reference to his weight. In his deposition, plaintiff Booker explained that when he talked to Maxey, he asked her to "investigate it because I took that several ways other than race. Were they calling me a homosexual? Was it about my weight or was it about my race?" In fact, on his EEOC questionnaire, plaintiff Booker noted "weight" as a reason for the alleged discrimination.

Plaintiff Booker now believes that Crowell's remark is racially offensive. Plaintiff believes that Crowell was asking if there was one Caucasian in the room and one African-American in the room.

Maxey reported to Rentschler that Crowell had made a statement about plaintiff Booker's "girth" and that Booker found the comment offensive. Maxey had listened to the tape of Crowell's remark and Rentschler read a transcript of the conversation. Based upon the content of the conversation, Maxey and Rentschler decided to speak with Crowell and Crowell's supervisor, Fred Wilson. On August 5, 2003, Crowell was counseled about his comment.

Plaintiff concedes that Crowell's remark was an isolated incident. Plaintiff admits that Crowell never made another comment to plaintiff after plaintiff complained to Audsley.

There are no "excused absences" in the Security Department. Tardies and absences are considered part of an employee's performance. It is undisputed that Plaintiff Booker had only

been an employee of defendant Kessinger/Hunter for five days when he was tardy to work by approximately two and a half hours. Having been hired in late March of 2003, plaintiff was counseled by Maxey on April 3, 2003 about excessive use of his cell phone in violation of company policy. This counseling session was noted in plaintiff's employee log.

On May 18, 2003, Audsley placed an entry in plaintiff Booker's employee log noting that plaintiff Booker had misread the alarm system, causing dispatcher Crosby to dispatch Crowell to the wrong location. Plaintiff was tardy to work on May 27, 2003. Also on May 27, 2003, Audsley placed an entry in plaintiff Booker's employee log regarding plaintiff's failure to properly identify a shoplifting suspect. Plaintiff was tardy again on May 28, 2003.

In addition to the days he was tardy, plaintiff failed to report to work for two days in May of 2003. Plaintiff also failed to report for work on two separate days in July of 2003. On July 30, 2003, Audsley placed an entry in plaintiff Booker's employee log noting that he failed to dispatch officers properly to the sprinkler area.

On August 1, 2003, Audsley placed an entry in plaintiff Booker's employee log noting that he had failed to dispatch officers properly to a robbery call at United Missouri Bank ("UMB Bank") in Crown Center.

Rentschler holds weekly or bi-weekly meetings with his supervisors, during which all of the introductory employees are discussed. Introductory employees are those who have been employed by defendant Kessinger/Hunter for less than six months. In those meetings, Rentschler was told that plaintiff Booker's performance was not satisfactory. Whenever a supervisor expresses dissatisfaction with an introductory employee's performance, Rentschler reviews the information placed in that employee's log.

Rentschler testified that he recalled five different supervisors telling him that plaintiff Booker's performance was deficient. These supervisors were Karen Maxey, Greg Coppotelli, Nancy Audsley, Shirley Lewis, and Channell Evans. Maxey reported to Rentschler that there were incidents in late July and early August where plaintiff Booker did not properly dispatch personnel to distress calls. On or about August 1, 2003, Audsley told Rentschler that plaintiff Booker had failed to promptly dispatch the proper personnel to a burglary alarm at UMB Bank. Defendant Kessinger/Hunter states that this offense alone justified termination.

Plaintiff Booker claims that although he "was accused by Charles Rentschler of failing to respond to a 'robbery' alarm, his claim is contrary to company document." Plaintiff cites Defendant's Exhibit 21 as the relevant company document. Defendant's Exhibit 21 is an Employee Log Event Report. This document indicates that plaintiff was counseled about the manner in which he handled the UMB Bank call. Specifically, plaintiff was instructed that he erred in calling "375 by radio" and then erred again by calling a supervisor on the telephone for further instructions when the initial call to 375 was not answered. Plaintiff was told that he should have put out an "all call" to all officers and supervisors over the radio. This company document does not contradict Charles Rentschler's testimony that he was informed that plaintiff had not handled the UMB Bank alarm properly.

On or about August 5, 2003, Maxey met with Rentschler and discussed plaintiff Booker's performance. Maxey and Rentschler discussed plaintiff Booker's attendance and the repeated instances in which plaintiff failed to dispatch personnel in a timely manner. Based upon these performance-related issues, Maxey recommended plaintiff's discharge and Rentschler agreed. Defendant Kessinger/Hunter terminated plaintiff's employment on August 5, 2003, effective

7

August 7, 2003.

Plaintiff believes that Rentschler was retaliating against him for reporting Crowell's comment. When asked during his deposition why he believed Rentschler was retaliating against him, plaintiff testified that it is because Rentschler was in charge of the area and because plaintiff is a "black man." The only time Rentschler spoke with plaintiff Booker was during the five to ten minute meeting during which plaintiff was informed that his employment was being terminated. Rentschler was never told that plaintiff believed Crowell's statement was racially motivated.

Defendant states that similarly situated introductory employees Glen Dunlap (a Caucasian male), Jerry Schneider (a Caucasian male), and Sherry Yeargin (a Caucasian female) were all terminated for attendance and/or performance issues.

Plaintiff went to the Equal Employment Opportunity Commission ("EEOC") on August 11, 2003 and filled out an EEOC questionnaire. According to plaintiff Booker, the questionnaire accurately reflects his charge of discrimination and the allegations in this lawsuit. Plaintiff signed the questionnaire under penalty of perjury and testified in his deposition that the questionnaire is truthful and complete.

## II.  Standard

A motion for summary judgment should be granted if, viewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Rafos v. Outboard Marine Corp., 1 F.3d 707, 708 (8th Cir. 1993) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). The moving party bears the burden of bringing forward sufficient evidence to

8

establish that there are no genuine issues of material fact for trial and that the movant is entitled to summary judgment as a matter of law.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon the allegations contained in the pleadings, "but must set forth specific facts showing there is a genuine issue for trial."  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

In reviewing a motion for summary judgment, this Court must scrutinize the evidence in the light most favorable to the non-moving party, according the non-moving party the benefit of every factual inference and resolving any doubts as to the facts or existence of any material fact against the moving party.  <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158 (1970).

III.  <u>Discussion</u>

A.    <u>Defendant's Motion to Strike Portions of Plaintiff's Affidavit and Exhibit A to Plaintiff's Affidavit</u>

Defendant moves to strike portions of plaintiff's Affidavit and Exhibit A to plaintiff's Affidavit which plaintiff has submitted in support of his Suggestions in Opposition to defendant's Motion for Summary Judgment.  Defendant argues that the affidavit is based upon inadmissible hearsay.  In addition, defendant states that plaintiff's Exhibit A is described as "a true and correct copy of a statement a [sic] prepared in connection to my EEOC Charge."  According to defendant, this statement was never submitted to the EEOC.

Courts considering a summary judgment motion may only consider submitted material that is admissible or useable at trial.  <u>Mays v. H.G. Rhodes</u>, 255 F.3d 644, 648 (8th Cir. 2001)(citing <u>Walker v. Wayone County, Iowa</u>, 850 F.2d 433, 434 (8th Cir. 1988)).  "Thus, without a showing of admissibility, a party may not rely on hearsay evidence to support or

9

oppose the [summary judgment] motion." Walker, 850 F.2d at 435 (citing Pink Supply Corp. v. Hiebert, Inc., 788 F.2d 1313, 1319 (8ᵗʰ Cir. 1986)).

Federal Rule of Civil Procedure 56(e) states that affidavits opposing a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Federal Rule of Evidence 801(c) defines hearsay as "a statement other than one made by the declarant while testifying at trial or hearing, offered in evidence to prove the truth of the matter asserted." *See* U.S. v. Esparza, 291 F.3d 1052, 1054 (8ᵗʰ Cir. 2002). Affidavits based on hearsay do not satisfy the requirements of Rule 56(e) and may not be considered for summary judgment purposes. JRT, Inc. v. TCBY Sys., Inc., 52 F.3d 734, 747 (8ᵗʰ Cir. 1995).

Plaintiff Booker relies on his own affidavit in opposing defendant's Motion for Summary Judgment. Paragraphs 2, 6, and 7 of plaintiff's affidavit contain hearsay. Plaintiff uses the phrases "it is my understanding," "instructed by," and "directives I previously received." In other words, plaintiff's representations in these affidavits are based upon statements made to him by third parties. Such statements are hearsay.

In paragraph 2 of plaintiff's Affidavit, he states that during most of his tenure as an employee of defendant, Karen Maxey was not at work in an effort to support his claim that Ms. Maxey was not his supervisor. Plaintiff fails to identify the source of his information, claiming that it was his "understanding" that Ms. Maxey was not at work. Such information, if true, could only come from an unidentified third party. In addition, this statement contradicts plaintiff's own deposition testimony that Ms. Maxey was his supervisor. Plaintiff may not create a question of

material fact by submitting an affidavit that contradicts his own sworn testimony.  Dotson v.

Delta Consol. Industries, Inc., 251 F.3d 780, 781-82 (8th Cir. 2001).  The remaining allegations in

paragraph 2 are stated as fact, but plaintiff fails to identify how the information asserted is within

his personal knowledge.  Paragraph 2 is stricken from plaintiff's Affidavit.

Paragraphs 6 and 7 of plaintiff's Affidavit contain hearsay.  Plaintiff argues that these

paragraphs are "excluded from hearsay by the agent/employee exclusion of FRE 801."  In order

for a statement to qualify as a party admission under Federal Rule of Evidence 801(d)(2)(D), the

declarant must have "significant involvement, either as advisor or other participant in a process

leading to a challenged decision."  Yates v. Rexton, 267 F.3d 793, 802 (8th Cir. 2001)(internal

citations omitted).  Plaintiff fails to make the requisite showing that Coppotelli had significant

involvement as an advisor or participant in the decision to terminate plaintiff's employment with

defendant Kessinger/Hunter.  Furthermore, Coppotelli's alleged statements to plaintiff are not

supported by the record in this case and are also contradicted by plaintiff's deposition testimony.

Therefore, paragraphs 6 and 7 are stricken from plaintiff's Affidavit.

In paragraph 9, plaintiff Booker states that he "personally observed Greg Coppotelli and

Chanel [sic] Evans (Security Supervisor) get very angry with and raise their voices with Charles

Crosby because of dispatching errors he made."  While plaintiff may have personally observed

Mr. Coppotelli and Ms. Evans raising their voices towards Charles Crosby, plaintiff's assertion

that they were angry based upon dispatching errors Mr. Crosby had made necessarily must be

based on either the content of the conversation between these third parties or an assumption on

the part of the plaintiff.  Either way, paragraph 9 contains the inadmissible statement that Mr.

Coppotelli and Ms. Evans were angry with Mr. Crosby because of dispatching errors he had

made. This paragraph of plaintiff's affidavit is stricken.

Defendant also objects to the four-page statement plaintiff Booker has attached to his affidavit, "Exhibit A." Plaintiff did not submit Exhibit A to the EEOC. Instead, he submitted the first two pages of what has now been labeled by plaintiff as Exhibit A. Plaintiff testified that the first two pages, those submitted to the EEOC, contained "the complete rundown of the events that had happened" and contained "a true and accurate representation of what went on." Now, at the summary judgment stage, plaintiff has attached two additional pages of material. There is no indication of when the two additional pages of material were created or where they came from prior to being submitted to the Court. Certainly they were not, as plaintiff claims in his Affidavit, submitted to the EEOC. Exhibit A has never been authenticated. In addition, plaintiff's Exhibit A contains inadmissible hearsay. As a result, plaintiff's Exhibit A is stricken from the record in this case.

B.    Defendant's Motion for Summary Judgment

    1.    Plaintiff's Title VII and Section 1981 Claims

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to compensation, terms, conditions, or privileges of employment" based upon the individual's race. 42 U.S.C. §2000e-2(a)(1). Plaintiff cannot bring a disparate impact claim because he did not raise such a claim before the EEOC. Nichols v. Am. Nat'l Ins. Co., 154 F.3d 875, 887 (8th Cir. 1998). In his EEOC Charge, plaintiff stated that he was verbally insulted over a recorded line based upon his race and was terminated after he complained about the remark to management. Plaintiff did not identify any other individuals who had been subjected to this type of conduct. In an attachment submitted to the EEOC,

12

plaintiff fails to discuss, identify, or even suggest that any other employee of defendant was treated more favorably than him. As a result, defendant is entitled to summary judgment on plaintiff's belated disparate impact claim.

Even if this Court were to allow plaintiff Booker to proceed with a disparate impact claim, defendant would be entitled to summary judgment on such a claim. In order to prevail on a disparate impact claim, plaintiff must demonstrate that: (1) he is a member of a protected class; (2) that he was meeting the employer's legitimate job expectations; (3) that he suffered an adverse employment action; and (4) that similarly situated employees outside the protected class were treated differently. <u>Tolen v. Ashcroft</u>, 377 F.3d 879, 882 (8th Cir. 2004).

It is undisputed that plaintiff is a member of a protected class; however, plaintiff cannot satisfy any of the remaining elements of his Title VII and §1981 claims. Plaintiff has not offered any evidence that he was meeting his employer's legitimate job expectations. It is undisputed that plaintiff Booker had several absences and tardies within the first five months of his employment with defendant. In addition, plaintiff had been counseled about excessive use of his cell phone in violation of company policy. Defendant has offered evidence that plaintiff misread the alarm system, failed to properly identify a shoplifting subject, failed to dispatch officers properly, and failed to properly dispatch officers to a robbery call at the UMB Bank. Rentschler also testified that five supervisors complained directly to him about plaintiff Booker's performance.

Plaintiff alleges only that another worker, Charles Crosby, a Caucasian, "was allowed [sic] take considerable time off." Plaintiff adds that on two occasions, he witnessed supervisors reprimanding Crosby. Courts insist on "'specific, tangible evidence' to demonstrate a disparity

Case 4:03-cv-01064-SOW   Document 33   Filed 08/29/05   Page 13 of 17

in treatment between similarly situated employees." Palesch v. Missouri Comm'n on Human Rights, 233 F.3d 560, 568 (8th Cir. 2000)(citations omitted).  Plaintiff has not established that Crosby was "similarly situated in all relevant respects" or that Crosby "dealt with the same supervisor, [had] been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." Clark v. Runyon, 218 F.3d 915, 918 (8th Cir. 2000).

Plaintiff has not offered any evidence regarding Crosby's alleged "considerable time off." Plaintiff has not offered any evidence regarding Crosby's work performance other than his own testimony that he witnessed supervisors reprimanding Crosby on two occasions.  In contrast, plaintiff had multiple performance-related problems, including failing to properly dispatch officers in response to a robbery alarm.

Finally, defendant has proffered a legitimate reason for terminating plaintiff's employment and plaintiff has failed to offer any evidence that this reason is pretextual. Plaintiff's Title VII and §1981 claims fail as a matter of law.  Defendant's motion for summary judgment is granted on these claims.

2. Plaintiff's Retaliation Claim

Pursuant to 42 U.S.C. §2000e-3(a), it is unlawful for an employer to discriminate against an employee because the employee "has opposed any practice made an unlawful practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." See, Clark County School Dist. v. Breeden, 532 U.S. 268, 269 (2001).  In this case, plaintiff claims that his opposition to harassment led to his termination.

14

Under the *McDonald Douglas* framework, plaintiff must present a prima facie case of retaliation. The elements of a prima facie case of retaliation are: (1) that plaintiff Booker engaged in some form of protected activity, (2) that he was subject to an adverse employment action, and (3) that the adverse employment action was causally connected to the protected activity. Sowell v. Alumina Ceramics, Inc., 251 F.3d 678, 685 (8th Cir. 2001). If plaintiff Booker can establish a prima facie case, then the burden shifts to defendant Kessinger/Hunter to provide a legitimate reason for its challenged action. Thorn v. Amalgamated Transit Union, 305 F.3d 826, 830 (8th Cir. 2002). If the defendant provides such a reason, then the burden shifts back to plaintiff Booker who must prove that the proffered explanation is merely a pretext for discrimination. Id.

Plaintiff Booker's complaint to defendant's management about Crowell's comment cannot be considered a protected activity because it was an isolated, and ambiguous, comment that did not rise to a violation of either Title VII or §1981. Even plaintiff admitted in his deposition that he did not know what Crowell meant by the comment. Plaintiff Booker stated that he asked management to investigate the comment "because I took that several ways other than race. Were they calling me a homosexual? Was it about my weight or was it about my race?"

Even if plaintiff's complaint to management could be considered a protected activity, plaintiff's retaliation claim fails. Plaintiff alleges that he was terminated for complaining about Crowell's comment. Plaintiff has no evidence to support this claim other than the timing of his complaint and his termination.

Defendant Kessinger/Hunter states that plaintiff Booker was terminated because he

15

consistently failed to meet the legitimate expectations of Kessinger/Hunter. Plaintiff Booker had several absences and tardies within the first five months of his employment with defendant. In addition, plaintiff had been counseled about excessive use of his cell phone in violation of company policy. Multiple supervisors had made entries in plaintiff's employee log indicating that plaintiff had misread the alarm system, had failed to properly identify a shoplifting subject, had failed to dispatch officers properly, and failed to properly dispatch officers to a robbery call at the UMB Bank. Rentschler also testified that five supervisors complained directly to him about plaintiff Booker's performance. Defendant states that the incident involving the robbery call alone justified plaintiff's termination. The robbery call occurred on August 1, 2003.

Thereafter, on August 5, 2003, Maxey and Rentschler met to discuss plaintiff's job performance. Based upon plaintiff's attendance issues and the repeated instances in which he had failed to properly dispatch calls, including the robbery call, Maxey recommended that plaintiff be discharged and Rentschler agreed.

Plaintiff has failed to identify any evidence that proves defendant's proffered explanation for his termination is merely a pretext for discrimination.

## IV. Conclusion

For the reasons stated above, it is hereby

ORDERED that defendant's Motion to Strike Portions of Plaintiff's Affidavit and Exhibit A to Plaintiff's Affidavit (Doc. #26) is granted. It is further

ORDERED that paragraphs 2, 6, 7, and 9 are stricken from plaintiff's Affidavit. It is further

ORDERED that plaintiff's Exhibit A, attached to his Affidavit, is stricken from the

16

record in this case. It is further

ORDERED that defendant's Motion for Summary Judgment (Doc. #14) is granted and

the Clerk of the Court shall enter final judgment at this time.


/s/Scott O. Wright_____
SCOTT O. WRIGHT
Senior United States District Judge

Dated: 8-29-05